**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAMINO PROPERTIES, LLC, a foreign limited liability company,<br><br>              Plaintiff,<br><br>     v.<br><br>INSURANCE COMPANY OF THE WEST, a California company, DOES INDIVIDUALS 1 through 100, inclusive; ROE ENTITIES 1 through 100, inclusive, BOE BONDING COMPANIES 1 through 100, inclusive,<br><br>              Defendants. | Case No. 2:13-cv-02262-APG-CWH<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE**<br><br>(Dkt. ##33, 40, 41, 44, 56, 57) |

A developer agreed to make off-site improvements to public roads and other property in exchange for the City of North Las Vegas ("City") allowing the developer to build a new residential community. The City also required the developer to purchase a bond to guarantee to the City that the developer will complete the off-site improvements (the "Bond"). The Bond was issued by defendant Insurance Company of the West ("ICW")

The developer went bankrupt before it finished building the community or the off-site improvements. Plaintiff Camino Properties, LLC purchased the half-built community and endeavored to finish it. The City assigned its rights under the Bond to Camino, and Camino, in turn, requested that ICW honor the Bond and pay for the off-site improvements. ICW refused.

Camino claims it finished the off-site improvements on its own and brought this lawsuit to collect on the Bond from ICW. ICW moves for summary judgment, arguing that (1) Camino's claims on the Bond are barred by the statute of limitations; (2) only the City, not Camino, can

1  enforce the Bond; and (3) the Bond is discharged because of a failed condition precedent.

2  Camino also moves for partial summary judgment that ICW is liable to Camino under the Bond.[1]

3      I deny all motions.  There are genuine disputes of fact about whether the statute of

4  limitations applies, whether Camino can enforce the Bond, and whether ICW is relieved of its

5  obligations.  Summary judgment is thus not warranted.

6

7  **I.      BACKGROUND**

8      **A.      Off-site improvements agreements and performance bonds generally**

9      When a developer seeks to build a new residential community, Nevada law allows cities

10  to require that the developer make off-cite improvements to public property surrounding the new

11  homes, such as road improvements.  Cities do this by requiring the developer to enter into an

12  "off-site improvement agreement" with the city.  This agreement specifies the improvements the

13  developer must make.  The city also may require that the developer buy a performance bond to

14  guarantee that the developer will finish the off-site improvements.  If the developer fails to make

15  the improvements, the bond obligates the surety to either complete the improvements or pay for

16  someone else to complete them.

17      **B.      Relevant facts in this case**

18      In this case, a developer wished to build a residential community in North Las Vegas.  In

19  2005, this original developer entered into an off-site improvement agreement with the City.[2]  That

20  agreement required the developer to make improvements to property surrounding its planned

21  community, such as renovating roadways.  ICW provided the Bond guaranteeing that the original

22  developer would complete all the improvements in the off-site improvement agreement.[3]

23

24

25      [1] ICW also filed two motions to strike and two motions for oral argument.  I decline to order oral
26  argument in this case.  I address ICW's motions to strike below.

        [2] (Dkt. #34 at 25-29.)

27      [3] (*Id.* at 31-32.)

28

The original developer went bankrupt before it could finish the community and off-site improvements.  The City notified ICW of the developer's default, and ICW endeavored to complete the improvements itself (rather than pay out the Bond's penal sum of roughly $750,000).[4]  ICW and the City negotiated a final punch list of items to finish, and ICW alleges it believed it had completed all of the improvements the City asked for.[5]  In 2010, ICW asked the City to release the Bond, but the City refused.[6]  The off-site agreement states it will be in effect until the City issues a written certificate of completion—which never occurred.[7]

The following year, Camino purchased the mostly-built residential community and began finishing the project.[8]  Camino asked the City to compel ICW to finish the off-site improvements or reimburse Camino for the improvements.[9]  Instead, the City assigned its rights under the Bond to Camino.[10]  Camino completed the off-site improvements and sued ICW for reimbursement under the Bond.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[11]  For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[12]

---

[4] (Dkt. #33-1 at 5.)

[5] (*Id.*)

[6] (*Id.*)

[7] (*Id.*)

[8] (Dkt. #35.)

[9] (*Id.*)

[10] (*Id.*)

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[12] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[13]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[14]  It "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[15]

A party must support or refute the assertion of a fact with admissible evidence.[16]  As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial.[17]  Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

## III.   DISCUSSION

ICW presents three theories for why it should not be liable to Camino on the performance bond: (1) the statute of limitations period has passed, (2) the assignment to Camino is invalid, and (3) the City's failure to notify ICW of defects in their performance relieves ICW of its bond obligations.

### A.   Whether the statute of limitations bars Camino's suit

The parties dispute both (1) which statute of limitations period applies to Camino's claim on the Bond and (2) the date the limitations period commences.

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[14] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[15] *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[16] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.,* 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

[17] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

1        **1.      Applicable limitations period**

2        ICW argues that Camino's claim on the Bond is governed by the three-year limitations

3    period for claims arising from statutory liabilities. NRS §11.190(3)(a).  Camino argues the six-

4    year contract limitations period applies because its claim on the Bond is contractual. NRS

5    §11.190(1)(b).

6        Generally, the nature of the principal's liability (not the surety's liability) defines the

7    applicable limitations period.  For example, in *Torrealba v. Kesmetis*, the Nevada Supreme Court

8    held that the three-year limitations period applied to a claim on a notary's performance bond. [18]

9    The Nevada Supreme Court looked to the nature of the notary's services, not to the terms of the

10   bond.  The Court explained that a claim on a notary bond is an action upon a liability created by

11   statute because "the position, duties, and liability of a notary public" are created by statute.[19]

12   Because the notary's liability is created by statute, the bond guaranteeing the notary's compliance

13   with a statute was also treated as a statutory liability for purposes of the limitations period.  In

14   *Steel v. Nat'l Sur. Corp. of N.Y.*, a real estate broker's bond was found to not be a statutory

15   liability because the bond guaranteed the broker would not defraud customers, a liability that

16   arose from common law duties rather than statutory ones.[20]

17       Here, there is no allegation that either the original developer or ICW violated a statute.

18   ICW's liability, if any, arises from the Bond and from the original developer's breach of the off-

19   site improvement agreement.  These are contractual claims subject to the contractual limitations

20   period of six years.

21       ICW argues that Camino's Bond claim is a statutory liability claim because a statute

22   required the developer to buy the Bond.  But, as explained above, whether the bond is required by

23   statute is irrelevant; the proper inquiry is whether the principal's liability arose from statute.  ICW

24

25   _____

26       [18] 124 Nev. 95, 103-04 (2008).

         [19] *Id*.

27       [20] 74 Ariz. 193, 196 (1952).

28                              Page 5 of 12

1    primarily relies on *Torrealba v. Kesmetis*, and *Sonoma County v. Hall*[21] for its argument.  But

2    neither of these cases supports its position.  In both cases the court applied a statutory liability

3    period to a bond claim because the bond guaranteed performance of statutory duties.  In

4    *Torrealba,* the Nevada Supreme Court applied the statutory liability period to a claim on a notary

5    bond because the bond guaranteed that a notary would comply with statutory duties.  Similarly, in

6    *Sonoma*, the California Supreme Court held that a bond guaranteeing a county recorder's services

7    was a statutory liability because the bond guaranteed performance of the recorder's statutory

8    duties.

9        Unlike in *Torrealba* and *Sonoma*, the Bond here guarantees compliance with a contract,

10   not a statute.  The terms of the off-site agreement are not prescribed by statute.  NRS §278.380

11   merely allowed the City to require the developer to enter into the off-site agreement and procure a

12   bond.  The developer, and ICW, are liable only if the off-site agreement was breached.  There is

13   no claim that either violated a statute.

14       ICW cannot be right that liabilities arising from a contract, where the contract is required

15   by statute, is a "liability by statute."  Indeed, drivers in this state are required to enter into a

16   contract for insurance.[22]  Even though insurance contracts exist because a statute requires drivers

17   to buy them, claims for breaches of the insurance policy are governed by the six-year limitations

18   period for contracts.[23]  Statutes require people to enter into contracts in many situations, but this

19   does not convert an action on the contract into a statutory claim.

20       The principal's and ICW's liability are thus contractual liabilities with a six-year

21   limitations period.

22   / / / /

23   / / / /

24

25   _____

26       [21] 132 Cal. 589 (1900)

27       [22] Nev. Rev. Stat. § 485.185.

         [23] *See State Farm Mut. Auto. Ins. Co. v. Fitts,* 120 Nev. 707, 710 (2004).

28                          Page 6 of 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2. Accrual date

The general rule in Nevada is that a cause of action accrues on the date a lawsuit could first be brought.[24]  A surety's liability usually accrues at the same time as the principal.[25]  But if a contract term says otherwise, a surety's liability may accrue at a later time.  The "discharge of the principal by the running of the statute of limitations" does not necessarily "exonerate [the surety's] obligation on the bond."[26]

ICW argues it could have been sued on the Bond the day the principal was obligated to complete the off-site improvements, which is March 17, 2007.  It argues that March 17, 2007 is the date Camino's bond action accrued.  But as ICW notes in other places during its briefing, the Bond specifically gave ICW the option of completing the improvements itself in lieu of paying out the Bond's penal sum.  By the terms of the Bond, the City could not have sued ICW until ICW failed to complete the improvements.

The relevant date for the statute of limitations calculation is December of 2007, six years before Camino brought this case.  In other words, the statute of limitations bars Camino's claims only if the City could have brought its claim before December of 2007.  But ICW has submitted no evidence the City knew of ICW's alleged failure to complete the improvements before December of 2007.  Indeed, ICW admits it continued working on the improvements long after then.

ICW elected to conduct the improvements to the property rather than paying out the penal sum.  ICW cannot now claim the City sat on its rights by allowing ICW the opportunity to finish the project.  ICW's motion for summary judgment based on the statute of limitations is denied.

////

////

---

[24] *Clark v. Robison*, 113 Nev. 949, 951 (1997).

[25] *Bloom v. Bender*, 48 Cal. 2d 793, 799, 313 P.2d 568, 572 (1957); *Royal Thrift & Loan Co. v. Cnty. Escrow, Inc.*, 123 Cal. App. 4th 24, 43 (2004).

[26] *Cnty. of Los Angeles v. Sec. Ins. Co.*, 52 Cal. App. 3d 808 (Ct. App. 1975).

## B. Whether the assignment to Camino was invalid

ICW next argues the City's assignment of the Bond to Camino was invalid and that Camino therefore cannot enforce the Bond.  ICW's sole argument against the assignment is that some courts in other states have held that municipalities may not assign their rights under performance bonds.[27]  ICW mainly relies on a California case from the 1950's: *Morro Palisades Co. v. Hartford Acc. & Indem. Co.*[28]  In *Morro*, the California Supreme Court held that only municipalities can enforce performance bonds in favor of the public.

But nearly every case after *Morro* has narrowed its holding.  Courts appear to now generally agree that municipalities may assign their rights under a performance bond if the assignment is made for the purpose of completing the improvements in question.  These courts reason that a surety like ICW should not "be exonerated . . . simply because the bargained-for improvements were completed by an assignee of the claim by agreement with the municipality. The purpose of the bond, to provide the means by which a municipality may insure completion of a bargained for performance, will be fulfilled" by allowing assignment.[29]  For example, in *Transdulles Ctr. Ltd. P'ship v. USX Corp.*, the Court held that a private assignee of a performance bond could enforce the bond because there was evidence the assignee had completed some of the off-site improvements in question.[30]

In its reply, ICW appears to now agree the City could assign its right under the Bond if the assignment was for the purpose of completing the improvements.  But ICW argues that the City

---

[27] The parties agree that Nevada courts have not yet addressed whether municipalities can assign rights under performance bonds.

[28] 52 Cal. 2d 397 (1959).

[29] *Clearwater Associates, Inc. v. F. H. Bridge & Son, Contractors*, 144 N.J. Super. 223, 228-29 (App. Div. 1976); *see also Transdulles Ctr. Ltd. P'ship v. USX Corp.,* 761 F. Supp. 430, 436 (E.D. Va. 1991) (holding that *Morro* has been "repeatedly" narrowed to situations where an assignment is made for the sole benefit of a private party and there is no evidence the improvements have been made); *Bd. of Sup'rs of Fairfax Cnty. v. Ecology One, Inc.*, 219 Va. 29, 33 (1978); C*learwater Associates, Inc. v. F. H. Bridge & Son, Contractors*, 144 N.J. Super. 223, 229 (App. Div. 1976); *Will Cnty. v. Woodhill Enterprises, Inc.*, 4 Ill. App. 3d 68, 75 (1971).

[30] *Transdulles*, 761 F. Supp. at 436.

1  did not assign its rights for the purpose of completing the improvements.  Instead, ICW argues,

2  the City assigned its rights "for Plaintiff's sole financial benefit."

3      Camino has provided evidence raising a genuine dispute about whether the City assigned

4  its rights under the Bond, at least in part, to facilitate completion of the off-site improvements.[31]

5  Indeed, the assignment's language indicates the assignment was made to facilitate the off-site

6  improvements.  It states the assignee "intends to complete" the improvements and that it is in the

7  "best interests of the Parties to complete" the improvements.[32]

8      Even if Nevada would adopt the assignment rule ICW raises, it has not established it

9  applies here.

10  **C.    Whether Camino's claims are barred by the City's failure to notify ICW**

11      A party's contractual obligations may be excused if another party has not satisfied a

12  condition precedent to the obligations.  But, contractual promises are not generally interpreted to

13  be conditions to another party's performance "unless it is clear that this is what the parties

14  intended."[33]  "Conditions precedent are not favored," and a contract is strictly construed against a

15  party asserting a condition precedent.[34]

16      ICW argues that its obligations on the bond are "conditioned" on the City notifying ICW

17  before finishing the off-site improvements.  ICW points to the Bond which states that "in case of

18  default by Principal, [ICW] may assume and complete or procure completion of the obligations of

19  Principal."  Although the City originally informed ICW of the default and allowed ICW to work

---

[31] (Dkt. #34.)  ICW suggests that Mr. Walters has no personal knowledge of this fact, but he avers that he directly participated in the discussions with the City's attorney.

[32] *Id.* at 39

[33] *Unihan Corp. v. Max Grp. Corp.*, 2011 WL 6814044, at *11 (C.D. Cal. Dec. 28, 2011); *see also Alpha Beta Food Markets v. Retail Clerks Union Local 770*, 45 Cal.2d 764, 771, 291 P.2d 433 (1956) ("[I]t is the general rule in contract interpretation that stipulations in an agreement are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language."); *Pacific Allied v. Century Steel Products, Inc.,* 162 Cal.App.2d 70, 79–80, 327 P.2d 547 (1958) ("Conditions precedent are not favored in the law and the provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction.").

[34] *Chevron U.S.A. Inc. v. Sheikhpour*, 469 F. App'x 593, 596 (9th Cir. 2012); *see also Helzel v. Superior Court*, 123 Cal.App.3d 652 (1981).

Page 9 of 12

on the off-site improvements, ICW argues the City should have also informed ICW that the off-site work had not been properly completed before having a third party finish it.

ICW provides no legal authority or analysis to suggest that the City's failure to notify ICW should be read as a "condition precedent" rendering the Bond unenforceable. The City notified ICW of the principal's default as the Bond required. The City gave ICW the opportunity to finish the improvements, as the Bond required. There is no clear language in the Bond suggesting that once ICW had failed to properly finish the project the City again had to notify ICW before finishing it itself. Even if the Bond did require notice, there is no indication the parties intended notification to be a condition precedent to ICW's obligations.

ICW has not provided sufficient evidence or authority for me to find the parties intended notification to be a condition precedent to ICW's obligation. ICW's motion for summary judgment is therefore denied.

### D.    Whether Camino is entitled to summary judgment on ICW's liability

Camino asks for partial summary judgment that the Bond was validly assigned and that ICW is liable under the Bond. Camino first argues there is no genuine dispute about whether the City assigned the bond for the purposes of completing the off-site improvements.[35] But ICW has submitted evidence indicating there is a genuine dispute about the real purpose of the assignment. For example, ICW points to language in letter agreements between Camino and the City that indicate Camino had assumed the obligation to finish the off-site improvements before the City transferred its Bond rights.[36] Camino is thus not entitled to summary judgment that the Bond was validly assigned.

Camino also seeks partial summary judgment that ICW is liable for breach of the Bond. As explained above, Camino has not established a lack of genuine dispute about whether the assignment was valid—so it is not entitled to summary judgment on ICW's liability. Regardless,

---

[35] (Dkt #44 at 23.)

[36] (Dkt. #33-1.)

there are genuine disputes about ICW's liability on the Bond.  For example, ICW has submitted evidence from which a reasonable jury could find that the City, and therefore its assignee Camino, agreed to relieve ICW of its obligations under the Bond by negotiating and signing off on the improvements ICW completed.[37]

I therefore deny Camino's request for partial summary judgment on whether its assignment is valid and whether ICW is liable for a breach.

### E.    Motions to Strike

ICW moves to strike portions of two affidavits Camino relies on, arguing the affiants have no personal knowledge of the statements they make.  In ruling on the parties' motions for summary judgment, I have not relied on most of these disputed statements.  The one statement I have considered in ruling on defendants' motion for summary judgment appears to be supported by personal knowledge.  I considered Mr. Walter's statement about whether the City assigned the Bond for the purposes of completing the improvements.  But Mr. Walters avers that he directly participated in the assignment discussions with the City, and ICW provides no evidence indicating Mr. Walters lacks personal knowledge of these events.  I thus deny ICW's motions to strike.

## IV.    <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Dkt. #33) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Dkt. #44) is DENIED.

IT IS FURTHER ORDERED that defendant's motions to strike (Dkt. ##40, 41) are DENIED.

////

////

---

[37] (*See, e.g.,* Dkt. #33-1, at ¶¶18-21; Dkt. #33-11 (Ex. 9); Dkt. 33-12 (Ex. 10); Dkt. #33-1, at ¶23.)

1         IT IS FURTHER ORDERED that defendant's motions for oral argument (Dkt. ##56, 57)

2    are DENIED.

3         DATED this 12th day of May, 2015.

4                                  _____

5                                  ANDREW P. GORDON
                                   UNITED STATES DISTRICT JUDGE