# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CAMINO PROPERTIES, LLC, a foreign limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>INSURANCE COMPANY OF THE WEST, a California company, DOE INDIVIDUALS 1 through 100, inclusive; ROE ENTITIES 1 through 100, inclusive, BOE BONDING COMPANIES 1 through 100, inclusive,<br><br>            Defendants. | Case No. 2:13-cv-02262-APG-CWH<br><br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

The trial of this matter was conducted on March 7, 8, 14, 15, and 16, 2016 without a jury. Pursuant to Fed. R. Civ. P. 52(a), I set forth my findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1.      The original owner/developer of the Camino Al Norte Townhomes project ("Project") was Camino Al Norte Properties, LLC ("Original Developer").

2.      The Project is located within the City of North Las Vegas ("CNLV"). CNLV required the Original Developer to enter into a Subdivision Offsite Improvements Agreement ("Offsite Improvement Agreement") as a condition for approval of the Project. [**Ex 502**]

3.      As a further condition for approval of the Project and in accordance with the Offsite Improvement Agreement, the Original Developer was required to post a performance bond in the amount of $733,541.80.

4.     On or about December 12, 2005 Insurance Company of the West ("ICW") issued City of North Las Vegas Department of Public Works Development of Offsite Improvements Performance Bond no. 2169554 ("Performance Bond") in the amount of $733,541.80. [**Exs 501, 502**] The Original Developer is named as the principal on the Performance Bond and CNLV is named as the obligee on the Performance Bond.

5.     The Performance Bond secures the Original Developer's obligations under the Offsite Improvement Agreement.

6.     The Performance Bond provides that if the Original Developer defaults, ICW may assure and complete or procure completion of the obligations of the Original Developer, and ICW will be subrogated and entitled to all rights and properties of the Original Developer arising out of the Offsite Improvement Agreement. [**Ex 501 ¶7**]

7.     The Offsite Improvement Agreement provides that in the event the Original Developer fails to complete the improvements within the applicable period, CNLV has the option to complete the improvements at the expense of the Original Developer or ICW. [**Ex 502, p. 2 ¶6**] Should that happen, the Performance Bond shall be used for the payment of the cost of completion of the improvements. [**Ex 502, p. 3 ¶10**]

8.     ICW obtained as security for the Performance Bond an indemnity from the Original Developer and a Set Aside Letter ("SAL") from the Original Developer's lender (Community Bank of Nevada) in the amount of $733,541.00.

9.     The Original Developer of the Project failed to complete the bonded work and eventually went bankrupt.  Community Bank was ultimately taken over by the Federal Deposit Insurance Corporation.

10.     As a consequence of the Original Developer's failure to complete the Project, CNLV made a claim against the Performance Bond. [**Ex 504**]

11.     ICW and CNLV eventually agreed to a scope of work to be completed by ICW, which was memorialized in a punch list dated January 5, 2010. [**Ex 514**]

1    12.    ICW hired Roel Consulting as its consultant, which retained Western States

2  Companies as the completion contractor to complete the work on the punchlist. [**Ex 511**]  The

3  work performed by Western States included both offsite and onsite work. [**Ex 513**]

4    13.    On July 8, 2010, a CNLV employee wrote on the punchlist "Field Items

5  Complete." [**Ex 516**]  However, not all work on the punchlist was completed.  For instance, no

6  as-built drawings were submitted to and approved by CNLV.  Even if it had been completed, the

7  punchlist did not contain all of the work needed to satisfy full completion of the work in the

8  Offsite Improvement Agreement.

9    14.    Subsequently, ICW requested that CNLV reduce or release the Performance Bond.

10  CNLV estimated the costs to complete the remaining work under the Offsite Improvement

11  Agreement to be $586,058.20. [**Ex 24**]

12    15.    On August 16, 2010, ICW adjuster David Lee Styers was told by CNLV

13  representative Dale Daffern that ICW would have to complete onsite work in order to have the

14  Performance Bond Released. [**Styers depo at 29:8-14; deposition exhibit 83; Ex 517**]

15    16.    ICW and CNLV never reached an agreement on the reduction or release of the

16  Performance Bond.

17    17.    Section of 10 the Offsite Improvement Agreement provides that "[a]ny application

18  for release of the surety upon the completion of the improvements by the Developer shall not be

19  granted unless accompanied by a written certificate from the Director [of Public Works] stating

20  that all requirements have been completed in accordance with the terms of the [Offsite

21  Improvement] Agreement." [**Ex 502**]

22    18.    ICW did not obtain a "written certificate" from CNLV's Director of Public Works

23  stating that all requirements had been completed in accordance with the terms of the Offsite

24  Improvement Agreement.

25    19.    ICW did not make a timely claim or demand on the FDIC to enforce the SAL that

26  Community Bank put up as security for the Performance Bond. [**Ex 124**]  On July 27, 2011, ICW

27  closed its file on the Project without seeking recovery. [**Id.**]

28    Page 3 of 11

20.     As a result of the Original Developer's bankruptcy and the failure of its lender, the FDIC obtained and foreclosed upon the lender's Deed of Trust lien against the Project.

21.     Plaintiff Camino Properties, LLC ("Camino") acquired the Project by way of the foreclosure sale. Prior to the purchase, representatives of Camino negotiated with representatives of CNLV about who would complete and pay for the work covered by the Offsite Improvement Agreement. Camino felt it could not profitably develop the Project if it had to absorb the cost of completing that work. Although no written agreement was put in place at that time, Camino believed CNLV would make demand on ICW to complete the work or surrender the bond amount to pay for the work to be completed.

22.     In January and March 2011, Camino sent at least three emails to CNLV requesting that it make demand on ICW for completion of the work or payment of the bond amount. [**Exs 518, 519, 520**] CNLV did not make that demand.

23.     On April 7, 2011, CNLV wrote to Camino that it would not make demand on ICW to complete the work because the remaining work was "private improvements." [**Ex 521**] This represented a change in CNLV's policy, due in part to its poor economic condition at the time and its desire not become liable for construction and maintenance of improvements on private property. [**Ex 526**]

24.     Camino decided to complete the Project according to the plans of the Original Developer, in order to avoid the expensive and time-consuming requirement of going through the permitting process. In addition, it was imperative for Camino to begin its work before July 1, 2011, when new building codes would go into effect. The new building codes likely would have delayed completion of the Project, significantly increased the cost, and jeopardized Camino's loan commitment.

25.     Camino did not enter into an offsite improvement agreement with CNLV nor did it assume the obligations of ICW the Original Developer under the Offsite Improvement Agreement for the Project.

26.     On June 16, 2011, Camino and CNLV entered into a letter agreement which allowed Camino to complete construction of the on-site elements of the existing 36 units and 24 foundations without requiring a new bond. [**Ex 523**]  The letter agreement also obligated CNLV to issue the necessary building permits on or before June 30, 2011. [**Id.**]  The agreement did not obligate Camino to complete the work under the Offsite Improvement Agreement, and the parties left for later resolution who would complete and pay for that work. [**Ex 528 at 3, ¶12**]

27.     On April 12, 2012, Camino and CNLV entered into a second letter agreement in which CNLV agreed not to require a bond for the completion of construction for the remaining 86 units of the Project. [**Ex 527**] This agreement likewise did not obligate Camino to complete the work under the Offsite Improvement Agreement, and the parties again left for later resolution who would complete and pay for that work. [**Ex 528 at 3, ¶12**]

28.     Camino and CNLV continued negotiating over completion of and payment for the work under the Offsite Improvement Agreement.  On approximately October 23, 2012, Camino's counsel (Stephanie Allen) sent to CNLV a draft assignment of CNLV's rights under the Performance Bond. [**Ex 528 at 3, ¶14**]  Ms. Allen testified that she believed CNLV had agreed to assign the Performance Bond to Camino and she would not have drafted that document unless an agreement had been reached between CNLV and Camino.

29.     On or about December 7, 2012, CNLV requested that Camino provide a video of the sewer system installed by the Original Developer at the Project, to verify that the sewer system was built in accordance with the Offsite Improvement Agreement and all applicable codes and regulations.

30.     The video revealed potential defects in installation, so CNLV directed Camino to clean the sewer and "re-video the entire sanitary system (both built and un-built areas) so that an accurate assessment can be made regarding minimum repairs to be required to bring the sanitary sewer system to an adequate level of service." [**Ex 26, 531**]

1    31.    The video of the sewer system and approval of the system was a requirement for

2    ICW's completion of the Offsite Improvement Agreement and release of its obligations under the

3    performance bond.

4    32.    Camino videoed and tested the sewer as directed by CNLV. That revealed that the

5    sewer installed by the Original Developer was defectively constructed and the flows were not in

6    compliance with the plans, specifications, and CNLV building codes and regulations.

7    33.    On February 22, 2013, ICW's adjuster David Lee Styers again spoke with CNLV

8    representative Dale Daffern in an attempt to reduce or release the Performance Bond. [**Ex 124**]

9    CNLV refused to release the bond unless ICW put up security in the amount of $2,500 per lot.

10   ICW declined to do that, and decided "the best course of action appears to be to do nothing

11   further unless/until contacted by the obligee." [**Id.**]

12   34.    On May 6, 2013, Camino's new counsel wrote to CNLV again requesting that it

13   execute the draft assignment of CNLV's bond rights based upon the parties' earlier agreement in

14   principle. [**Ex 532**]

15   35.    On May 7, 2013, Camino made claim against ICW on the Performance Bond as a

16   result of the sewer system defects. [**Ex 533**] In its claim to ICW, Camino invited ICW to visit the

17   site to inspect the defects before repairs were commenced. ICW did not inspect the defects. ICW

18   responded that as Camino was not the obligee on the Performance Bond and had no third party

19   rights, Camino had no right to enforce under the Performance Bond.

20   36.    On June 12, 2013, Camino and CNLV executed the Assignment of CNLV's rights

21   to the Offsite Improvement Agreement and Performance Bond. [**Ex 535**] The Assignment states

22   that "it is in the best interests of the Parties to complete or have completed those certain

23   improvements on the Property in order to complete the Project." [**Id.**] ICW is not a party to the

24   assignment.

25   37.    On June 18, 2013, Camino, as assignee of CNLV's rights under the Offsite

26   Improvement Agreement and Performance Bond, made a follow-up demand upon ICW to repair

27   and complete the work or tender the bond proceeds. [**Ex 536**] ICW denied Camino's demand.

28

38.     In order for Camino to repair the defective work installed by the Original Developer or ICW's contractors, and to complete the remaining work covered by the Performance Bond, Camino had to remove and replace portions of roadways and other work previously installed.  Camino also had to complete a substantial amount of other bonded offsite improvement work on the Project. [**Ex 529A-E**]

39.     The work performed by Camino for which it now seeks reimbursement was reasonable and necessary to obtain acceptance by CNLV under the Offsite Improvement Agreement.

40.     Camino seeks to recover $618,249.50 from ICW, which represents the amount that was reasonably and necessarily incurred by Camino to complete and repair the defective work and to fulfill ICW's obligations under the Offsite Improvement Agreement and the Performance Bond.

41.     The $618,249.50 which Camino now seeks reimbursement from ICW is substantiated by the estimate CNLV prepared to determine the costs to complete the Offsite Improvement Work when ICW left the Project in July of 2010.

### CONCLUSIONS OF LAW

A.     **Plaintiff's Causes of Action**

**First Cause of Action – Breach of Contract**

1.     A plaintiff claiming breach of contract must "show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (*citing Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)).

2.     In general, contracts are freely assignable in the absence of language to the contrary. *Ruiz v. City of N. Las Vegas*, 255 P.3d 216, 221 (Nev. 2011).  The law looks with favor on the free assignability of rights. *Id.* (*citing* 9 JOHN E. MURRAY, JR., CORBIN ON CONTRACTS § 49.9, at 214 (rev. ed. 2007)).

3.      Neither the Offsite Improvement Agreement nor the Performance Bond prohibits assignment.

4.      Pursuant to the "Assignment of Rights," CNLV transferred and assigned to Camino "...all rights, title, interest, claims that [CNLV] may have related to the Offsite [Improvement] Agreement and [Performance] Bond."

5.      The assignment did not enlarge the obligations of ICW, it only changed the identity of the party to whom the obligations were owed.

6.      A public entity may assign a construction performance bond like the one at issue in this case if the assignment is made for the purpose of completing the improvements in question. *Clearwater Associates, Inc. v. F. H. Bridge & Son, Contractors*, 365 A.2d 200, 204 (App. Div. 1976) ("We therefore hold that a municipality may assign its rights under a bond where the assignment is for the purpose of obtaining the performance guaranteed by the bond and upon a showing that the improvements have been made.  We perceive no reason why a surety, compensated for the obligation it assumes to a municipality, should be exonerated in circumstances where its liability to the municipality on the bond is clear, simply because the bargained-for improvements were completed by an assignee of the claim by agreement with the municipality.  The purpose of the bond, to provide the means by which a municipality may insure completion of a bargained for performance, will be fulfilled by this holding."); *see also, Transdulles Ctr. Ltd. P'ship v. USX Corp.,* 761 F. Supp. 430, 436 (E.D. VA. 1991); *Bd. of Sup'rs of Fairfax Cnty. v. Ecology One, Inc.*, 245 S.E. 2d 425 (VA. 1978); *Will Cnty. v. Woodhill Enterprises, Inc.*, 4 Ill. App. 3d 68, 75 (1971).  So long as there is a public purpose for the assignment, the assignment will be upheld. *Transdulles,* 761 F. Supp. at 436.  The public purpose of achieving completion of the construction is not diminished by the fact that construction has been substantially completed prior to the assignment. *Id.* (finding that Transdulles had partially completed the required work).

7.      CNLV's "Assignment of Rights" states that "[i]t is in the best interest of the Parties to complete or have completed these certain improvement on the Property in order to

complete the Project . . . at no cost to" Camino. [**Ex 535 at ICW000359**] Camino began to

perform the bonded work with the agreement in principle with CNLV that the Performance Bond

would be assigned to Camino to pay for that work.  The Assignment confirms that agreement and

was made to obtain completion of the bonded work.  Thus, the Assignment is valid and

enforceable.

8.      Under general principles of assignment law, an assignee steps into the shoes of the

assignor. *Boyajian v. New Falls Corp.* (*In re Boyajian*), 564 F.3d 1088, 1091 (9th Cir. 2009).  As

a result of the Assignment of Rights, Camino stepped into the shoes of CNLV as obligee under

the Performance Bond.

9.      Pursuant to the Offsite Improvement Agreement, "[i]f the construction or

installation of any improvements or facilities are not completed . . . as prescribed by [CNLV]; or

if such construction is not in accordance with applicable regulations, standards, specifications and

ordinances of [CNLV], then, in any of such events, [CNLV] may, at its option, proceed to

complete said improvements at the expense of the Developer under any of the security or surety

pledged pursuant to this [Offsite Improvement Agreement] and ordinances relating to such

security or surety."

10.      The Original Developer and ICW failed to properly construct a portion of the

bonded sewer system as required by the Offsite Improvement Agreement, and failed to complete

the work required under the Offsite Improvement Agreement.

11.      As assignee of CNLV's rights under the Performance Bond and Offsite

Improvement Agreement, Camino had a legal right to demand completion and/or correction of

any of the bonded work that was not completed in accordance with Offsite Improvement

Agreement, or to receive payment of the proceeds of the Performance Bond to pay for such work.

12.      ICW materially breached its obligations under the Performance Bond by, among

other things, not performing repairs to the defectively constructed sewer system, not properly

completing the work under the Offsite Improvement Agreement, and not tendering the proceeds

of the bond in a sufficient amount to cover the costs to complete the work.

13.     As a result of ICW's breach of the Performance Bond, Camino has been damaged in the amount of $618,249.50.

**Second Cause of Action – Breach of the Implied Covenant of Good Faith and Fair Dealing**

14.     A covenant of good faith and fair dealing is implied in all Nevada contracts. *A.C. Shaw Constr. v. Washoe Cnty.*, 105 Nev. 913, 914, 784 P.2d 9, 10 (1989).

15.     To succeed on its cause of action for breach of the covenant of good faith and fair dealing, Camino must show that: (1) it and ICW were parties to an agreement; (2) ICW breached its implied duty of good faith and fair dealing by performing in a manner that was unfaithful to the purpose of the contract; and (3) Camino's justified expectations were thus denied. *Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (Nev. 1995).

16.     ICW did not breach the implied covenant of good faith and fair dealing.  Faced with demands from Camino, ICW was entitled to investigate before paying on the Performance Bond.  ICW representative Micah Schwartz properly questioned whether Camino had any rights under the Performance Bond.  ICW asked CNLV representative Dale Daffern and Camino for additional information about the purported assignment of the Performance Bond and the work that was performed.  He did not receive sufficient responses prior to this lawsuit being filed. Moreover, by recovery of its damages under the first cause of action asserting breach of contract, Camino' justified expectations under the Performance Bond will be satisfied.

**Third Cause of Action – Breach of City of North Las Vegas Municipal Code Section 16.16.130 and NRS 338**

17.     Camino appears to have abandoned this claim.  Moreover, Camino's recovery of its damages under the first cause of action (asserting breach of contract) satisfies any claim Camino would have under this cause of action.  Thus, this cause of action is moot.

**Fourth Cause of Action – Declaratory Relief**

18.     Given that Camino has prevailed on its claim for breach of contract, this cause of action is moot.

<u>**CONCLUSION**</u>

Based on the foregoing, Camino has proven that ICW breached its contractual obligations owed to Camino, and Camino is entitled to recover upon its first cause of action asserting breach of contract.

ACCORDINGLY, Camino Properties, LLC is awarded $618,249.50 against Insurance Company of the West.  The clerk of the court shall enter judgment accordingly.

Dated:  March 23, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

Page 11 of 11